UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER FORD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) No. 4:04CV1658-SNL |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody" is before the Court. The Government has responded and petitioner has replied to the Government's response.

### Standard of Review

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also U.S. v. Coleman, 2005 WL 3021104 (E.D. Mo. 2005).

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The performance prong of the Strickland test remains the same. Id. at 58-59. To establish prejudice in the context of the plea process the defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The standard has been defined by the United States Court of Appeals for the Eighth Circuit as follows:

"An ineffective assistance claim generally requires two showings. 'First the defendant must show that counsel's performance was deficient.' Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

> This entails 'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id. Second, the defendant must show prejudice. Id. To show prejudice, he or she must prove that 'counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable.' Id. *accord* Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination; rather, the focus of the question of prejudice is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.)."

Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004). A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). Ordinarily, if the defendant cannot prove prejudice, it is not necessary to address whether counsel's performance was deficient. United States v. Apfel, 97 F.2d 1074, 1076 (8th Cir. 1996); DeRoo, at 925.

Failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. DeJan v. United States, 208 F.3d 682, 685 (8th Cir. 2000); Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997), cert. denied, 522 U.S. 1064, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998). United States v. Villalobos, 2004 WL 2202666 (N.D. Ia.), United States v. Trotter, 2002 WL 827416 (D.Neb.), United States v. Knakmuhs, 2000 WL 34031866 (N.D. Ia.). See also Coleman v. U.S., 2005 WL 3021104 (E.D. Mo. 2005).

This rule applies whether the conviction was obtained through trial or through the entry of a guilty plea. United States v. Cain, 134 F.3d 1345, 1352 (8th Cir. 1998), Matthews, 114 F.3d at 113). A defendant may surmount this procedural default only if the defendant "can show both (1) cause that excuses the default and (2) actual prejudice from the errors asserted." Matthews, 114 F.3d at 113.

**Background**

Petitioner was one of 18 defendants charged in a 38-count indictment. Of those counts, petitioner was charged in Count 1 and Count 14. In Count 1, all defendants were charged in a conspiracy to distribute and possess with intent to distribute heroin and cocaine and crack cocaine in violation of Title 21 U.S.C. § 841(a)(1). The conspiracy was alleged to have begun on or before January 1998 and continuing thereafter to the date of this

2

indictment with the exact date unknown.  Portions of Count 1 of the indictment are set out as follows:

> "B.    MANNER AND MEANS OF THE CONSPIRACY
>
> 1.    It was part of the drug trafficking conspiracy that defendants Brian White and David Foston served as the leaders and organizers of the conspiracy and arranged for and directed large amounts of heroin, cocaine and 'crack' cocaine to be transported within the St. Louis metropolitan area.
>
> 7.    It was further part of said drug trafficking conspiracy that Chris Ford was a distributor for the white/Foston organization.  Chris Ford was a close associate of Brian White, who served as a lieutenant in the organization and supplied quantities of heroin to street distributors.
>
> 8.    It was further part of said drug trafficking conspiracy that from on or about February 12, 2002, through on or about May 14, 2002, Chris Ford repeatedly used a telephone to cause and facilitate the distribution and possession with intent to distribute heroin and 'crack' cocaine (cocaine base)."

Pursuant to a plea agreement, on September 30, 2003, petitioner entered a plea of guilty to Count 1.

Portions of the agreement are set out as follows:

> "The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."

Plea Agreement, page 4.

> "B.    Offense Conduct:
>
> 1.    Base Offense Level:   The parties recommend that as to Count 1, the base offense level is 32 as found in Section 2D1.1(c).  The parties recommend that the quantity of heroin for which the defendant is responsible, including relevant conduct is more than 1 kilogram and less than 3 kilograms, resulting in the recommended Base Offense Level."

Plea Agreement, page 6.

> "E.    Estimated Total Offense Level:    Based on these recommendations, the parties estimate that the Total Offense Level is 31."  (This was calculated on the addition of levels to the base offense level because a weapon was involved and a deduction of three levels for acceptance of responsibility).

Plea Agreement, page 7.

> "4.    Stipulation of Facts Relevant to Sentencing:

3

> Defendant Chris Ford admits to conspiring with co-defendants Brian White, David Foston and others to distribute and possess with the intent to distribute heroin, cocaine and crack cocaine in various areas in St. Louis City and St. Louis County. Defendant Chris Ford served as a distributor for the organization headed by co-defendants Brian White and David Foston.
>
> The distributions of heroin by defendant Ford were confirmed through witnesses who advised that defendant Ford received quantities of heroin from co-defendants White and/or Foston for distribution. this activity was further confirmed through court authorized wiretap conversations. The following court authorized wiretap intercepts illustrate defendant Ford's involvement in the conspiracy (the parties utilized code words when discussing drug trafficking and thus the following represent summarized translations): On April 4, 2002, after receiving calls regarding the poor quality of a batch of heroin, co-defendant White calls defendant Ford to inquire whether Ford's customers have been complaining. On April 8, 2002, defendant Ford called co-defendant White and stated that he gave some of the heroin to one of his main customers who was upset about the quality. Co-defendant White (said) that he had some good quality heroin. On April 8, 2002 defendant Ford calls defendant White and states that an individual wants to get an ounce of heroin from him. On April 20, 2002, co-defendant Ford calls defendant White and complains about a customer who owes Ford money for narcotics."

Plea Agreement, page 9.

> "Due to the length of breadth of the charged conspiracy, the exact amount of controlled substances attributable to defendant Chris Ford is not subject to precise calculation. The Government has evidence including the testimony of witnesses that the defendant was an integral member of the conspiracy for a significant period of time and therefore the parties have reached an agreement that the amount of heroin reasonably attributable to defendant Ford is at least one (1) kilogram but less than three (3) kilograms which is supported by the evidence including witness statements, surveillance, undercover buys and court authorized wiretaps.
>
> The defendant and the Government agree that the facts set forth above are true and may be considered as "relevant conduct" pursuant to Section 1B1.3."

Plea Agreement, page 10.

On September 30, 2003 petitioner entered a plea of guilty to Count I of the indictment. Portions of the dialogue between the Court and petitioner during the plea are set out as follows:

> "Now you've agreed with the government with more certainty how to establish the first element. That is the total offense level. Now this is set out on page six and seven of your agreement. We start with what we call a base offense level. Now that's calculated on the quantity of illegal drugs that you're accountable for. You and the government have agreed that you're accountable for at least one kilogram and not more than three kilograms of heroin. Now if that's correct, then you have a base offense level of 32 which is set out in your agreement."

4

Transcript, pages 6 and 7.

    The Court:    "Now all of these things are pretty complicated in determining how to calculate a range of punishment and do you have any question at all about it?

    Mr. Ford:    No sir.

    The Court:    You've gone over this with your attorney, haven't you?

    Mr. Ford:    That's right, sir."

Transcript, page 8.

"Now I will read the five page portion of this document, manner and means of the conspiracy to you, or you can waive the reading of that portion of the indictment, whichever you prefer.

    Mr. Ford:    I'll waive it, sir.

    The Court:    Do you have any question as to what you're charged with in Count 1 of the indictment?

    Mr. Ford:    No sir.

    The Court:    You plead guilty or not guilty?

    Mr. Ford:    Guilty, sir.

    The Court:    Mr. Rogers has been your attorney throughout, has he not?

    Mr. Ford:    Yes sir.

    The Court:    You've had various opportunities to go over the case with him:

    Mr. Ford:    Yes sir.

    The Court:    I assume you are satisfied with him as your lawyer?

    Mr. Ford:    Yes sir."

Transcript, page 12.

    The Court:    Do you have a copy of the agreement, Mr. Rogers?

    Mr. Rogers:    Yes, Your Honor.

    The Court:    Mr. Ford, if you could turn to the last page of your copy, number 16. On

my original it appears to be a signature of Christopher Ford. Did you sign that?

Mr. Ford: Yes, sir.

The Court: Did you read this before you signed it?

Mr. Ford: Yes, sir. I went over it briefly.

The Court: Did you go over it with Mr. Rogers before you signed it?

Mr. Ford: Yes, sir.

The Court: Is there anything in here you do not understand?

Mr. Ford: No, sir.

The Court: Well, if there is, tell us and we'll consider it for you. You want to talk with your attorney just a minute after you - -

Mr. Ford: Yes, sir.

(An off the record discussion was held between client and counsel).

Mr. Ford: Yes, sir, Your Honor.

The Court: I just want to make certain you understand what's in here and if you don't, why, tell me.

Mr. Ford: Yes, sir.

The Court: Could you turn to page nine of your copy, please. The middle of page nine, paragraph four, sets out stipulation of facts relative to sentencing, continues through page ten and the top part of 11. Did you read all of that carefully?

Mr. Ford: Yes, sir.

The Court: Is everything in there correct?

Mr. Ford: Yes, sir.

Transcripts, pages 16, 17 and 18.

The Court: Let me tell you what supervised release is. If I sentence you to a period of time of imprisonment, then I will also sentence you to a period of supervised release. What this means is that when you get out of prison, then you're on a period of supervision by a probation officer. You have to report in to that officer, the officer will want to know where you are, what you're doing and that you're not violating the law. Now when you finish your term of supervised

release, then you're free. If you violate any of the provisions of your supervised release, then you could be subject to further punishment, but it's basically a period of supervision that the probation officer has for a period of time after you get out of prison. Do you have any question as to what that is?

    Mr. Ford:    No, sir.

Transcript, pages 18 and 19.

    The Court:    Is there anything you and I have talked about here, Mr. Ford, you do not understand?

    Mr. Ford:    No, sir.

    The Court:    In view of everything that we have said, do you still tell me you're guilty of the charge I read to you?

    Mr. Ford:    Yes, sir.

Transcript, page 21.

On December 19, 2003 petitioner was sentenced to a term of 135 months followed by a five-year term of supervised release.

## Grounds for Relief

Ground 1: In this ground, petitioner contends that his counsel was "ineffective" and that he did not "object and argue" that the procedure deprived petitioner of his substantial constitutional rights, in particular those under the Sixth Amendment. In his argument, petitioner contends that his counsel failed to properly advise him and failed to make a so-called Booker argument.[1]

Petitioner avers that the indictment in Count 1 set out that a conspiracy existed between January 1998 and December 2003. Petitioner states that he was incarcerated by the State of Missouri during a portion of that time, and that his counsel did not properly use this information to show that he could not have been involved in the conspiracy for that time. Yet, petitioner did not take into consideration that a party may be involved in a conspiracy even if he was not one of the instigators and entered the conspiracy after it had already begun; that a party is not required to

---

    [1]    The Booker argument will be discussed in detail later in this opinion.

know who all of the conspirators are or their functions nor is he required to participate in the conspiracy during the entire period. In fact, a party may be a member of a conspiracy for only a brief period of time as long as he is aware that there is a conspiracy to violate the law and that he performed an act which was designed to carry out the intent and purposes of the conspiracy.

Petitioner also argues that he could not have been involved with at least one kilogram of heroin and not more than three. The history of this case belies petitioner's argument. He entered a plea of guilty to Count 1 of the charge. That count provided that the conspiracy began on or before January 1998 and continued thereafter to the date of this indictment with the exact dates unknown. The indictment provided that "8." It was further part of said drug trafficking conspiracy that from on or about February 12, 2002 through on or about May 14, 2002 Chris Ford repeatedly used a telephone to cause and facilitate the distribution and possession, with intent to distribute heroin and 'crack' cocaine (cocaine base)." Transcript, page 4.

In paragraph 4 of the stipulation of facts in the plea agreement, Transcript, page 9, petitioner admitted to co-conspiring with certain co-defendants to distribute and possess, with intent to distribute heroin cocaine and crack-cocaine. He admitted that he served as a distributor for the conspiratorial organization. He admitted the facts setting out his distribution of heroin were confirmed through witnesses and authorized wiretap conversations. In the factual recitation, petitioner admitted that "due to the length and breadth of the charged conspiracy, the exact amount of controlled substances attributable to defendant Chris Ford is not subject to precise calculation." He admitted that the Government had evidence that he was an integral member of the conspiracy for a significant period of time. He admitted that the amount of heroin attributable to him was one kilogram, but less than three kilograms, and that that quantity was supported by evidence including the statement of witnesses, surveillance, under-cover buys and court-authorized wiretaps.

During the plea colloquy, petitioner agreed that everything was correct in the factual statement of the plea agreement. Transcript, page 17. He stated that he understood the dialogue at the plea agreement between the Court and him, Transcript, page 21, and that he was satisfied with his lawyer. Transcript, page 12.

The allegations in this ground should be ruled against petitioner.

Ground 2: This Ground is a reiteration of the assertions in Ground 1. Here, petitioner states that he never admitted to the quantity of the illegal drug and that his counsel failed to contest that fact at the plea. The Court's findings and recitation of the facts set out earlier in this memorandum properly address this ground as well, and it too should be ruled against petitioner.

Ground 3: Petitioner asserts here that the Court adopted the pre-sentence investigation report in violation of his Sixth Amendment rights. This, too, is a Booker argument which the Court will address in Ground 4.

Ground 4: In this assertion, petitioner specifically urges the Court to find the proceedings unconstitutional and in violation of Booker.[2] In United States v. Moss, 252 F.3d 993 (8th Cir. 2001) the Court of Appeals held that the precursor to Blakeley, Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), was not of watershed magnitude and that the holding of Teague v. Lane, 489 U.S. 288 (1989) barred the retroactive application of an Apprendi claim on collateral review. Similar reasoning prevents Blakeley from being applied retroactively in this case. See Schriro v. Summerlin, 124 S.Ct. 2519, 2522 (2004). (A procedural rule applies only prospectively unless they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Ibid at 2523. This assertion should also be ruled against petitioner.

Ground 5"B": Here, petitioner contends that the supervised release imposed exceeds the authorized sentence of the offense charged.

Petitioner agrees that supervised release may be ordered as part of the sentence, 18 U.S.C. §3583(a), but states that creates an ambiguity in the sentence. Petitioner cites no authority indicating that supervised release is ambiguous under the statute nor is it in violation of any of petitioner's constitutional rights. There is no such authority and this argument is without merit.

---

[2] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakeley v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Petitioner has cited no facts or legal authority to show that his counsel's performance fell below an objective standard of reasonableness. He produces nothing to show that there was a reasonable probability that, but for counsel's errors, if any, petitioner would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. at 59. Accordingly, his § 2255 request should be ruled against him.

As a further basis for the Court's findings, it would appear that petitioner waived his right to assert many of the grounds in his motion. In the plea agreement, Transcript, page 4, under the heading "Habeas Corpus" the petitioner waived all rights to contest the conviction or sentence in any post-conviction proceeding except for claims of prosecutorial misconduct or ineffective assistance of counsel. Such a waiver is binding on petitioner. Chesny v. U.S., 367 F.3d 1055, 1057 (8th Cir. 2004).

The Court finds that the record affirmatively refutes the factual assertions upon which petitioner's motion is based, and accordingly an evidentiary hearing is not required. Coleman v. U.S., Supra; Covey v. U.S., supra.

For these reasons, petitioner's § 2255 request for relief should be denied.

Dated this __12th__ day of February, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE